Mr. Justice Van Orsdel
delivered the opinion of the Court:-
This is an appeal [by Charles A. Lindstrom] from the decision of the Commissioner of Patents in an interference proceeding. The Examiner of Interferences awarded priority of' invention to appellee, John McE. Ames, which decision was-reversed by the Board of Examiners-in-Chief. Both of these tribunals decided the question upon the facts of the case. The-Commissioner, however, reversed the Board of Examiners-in-Chief, on the ground that appellant’s application was defective, and therefore did not constitute a constructive reduction to practice. Erom this decision the case comes here on appeal.
The invention before us relates to a car door operating gear. The issue is set forth in six counts, of which the following arc sufficient to illustrate the invention for the purposes of this-appeal: •
“1. In a car having an inclined floor section and a downwardly hanging discharge door at the lower end thereof, the *367 door mechanism comprising the crank frame affording connected crank arms, hub and shaft mounted between the draft' sills, a bearing for said shaft, the transverse operating shaft extending below said floor section and connected with said hub,, and the connecting rod pivotally mounted at its upper end between said crank arms, and at its lower end pivotally connected' with the lower edge of the door, said crank frame and rod when the door is closed standing substantially in line with each other, and with said floor section substantially as set forth.”
“6. In a car having an inclined floor section and a downwardly hanging discharge door at the lower end thereof, the-door mechanism comprising the transverse operating shaft extending below said floor section, and having a bearing at the-side of the car and in a hanger connected with one of the draft sills, and possessing a polygonal inner end, and the crank frame between said sills affording the connected crank arms, hub and shaft, said hub being recessed to receive the inner polygonal end of said operating shaft, and the shaft of said crank frame being mounted in a hanger bearing connected with the other one of said sills, combined with the connecting rod pivotally mounted at its upper end between said crank arms, and at its lower and pivotally connected with the lower edge of the door, said crank frame and rod, when the door is closed, standing substantially in line with each other and with said floor section-substantially as set forth.”
It was held by the Commissioner and Examiners-in-Chief that appellant conceived the invention in issue in November, 1904, and by all of the tribunals of the Patent Office that appellee conceived it as early as July, 1904. We see no reason-to disturb these findings. Appellant filed his application on February 1, 1905. Appellee filed his May 1, 1905, on which a patent was inadvertently issued December 12, 1905. It will thus be seen that appellee, though the first to conceive, was the-last to file his application, which, however, antedated any actual reduction to practice by appellant. Appellee has never built a device embodying his invention.
Appellant’s application is assailed as a constructive reduc *368 tion to practice on the ground that certain changes were made therein after execution. Hule 31 of the Patent Office provides: “Every application signed or sworn to in blank, or without actual inspection by the applicant of the petition and specification, and every application altered or partly filled up after being signed or sworn to, will be stricken from the files.”
This rule, we think, is not intended to prevent an attorney from making formal or immaterial changes in an application once sworn to, but it certainly precludes the insertion of new and material matter. In appellant’s application two figures were added showing modifications of the device, a description of such modifications, and three additional claims, and several minor alterations were made in the specification. These amendments, at least, so far as the additional drawings and their descriptions are concerned, constituted new matter, and would, for that reason, have been refused by the Primary Examiner, if inserted by amendment subsequent to the filing of the application. Hence, they come clearly within the rule of the Patent Office.
Counsel for appellant ask us to erase the new matter and restore the application to the condition in which appellant ■executed it. But that is not within the province of this court. Our duty is to pass upon an application as actually filed, and not to reconstruct or revise it to suit the exigencies of a particular case. If the latter course were adopted in this instance, it would establish a dangerous practice under which we would be called upon continually to change and correct defective applications.
It is also contended by counsel for appellant that there is no evidence to show that the alterations were not made before ■execution. Appellant, however, wrote his counsel on January 19., 1905, the same day on which his application papers were ■sworn to, suggesting the changes he desired, and concluding with the following: “These are only suggestions, and you may be able to improve on them. The papers have been executed and are herewith returned. Kindly send me usual *369 copies of specifications and drawings when they are ready, and oblige.” From this it is clear that the changes must have been made after execution. But we are asked to assume that these changes were noted on the copy which was sworn to, and were included in the oath. There is absolutely nothing in the record that would warrant this assumption. In fact, the letter of January 19th makes no reference to such annotations, but sets out the desired amendments, referring to them as “suggestions.” Neither can we assume that appellant swore to this letter.
It is also contended by counsel for appellant that whether or not appellant’s application is defective is not proper to be considered in this proceeding, but is purely an ex parte matter. They rely upon the case of Snider v. Bunnell, 101 Off. Gaz. 2572, where the Commissioner said: “He (Snider) may be the prior inventor, and entitled to receive a patent upon a formal application, even if his present application is informal. In other words, the objection does not go to the merits of the interference or of Snider’s claim.” But in that case no attempt was made to rely upon the informal application as a reduction to practice. It may well be that an inventor could perfect his right to a patent in such a manner as not to lose it by the filing of a defective application. But that is not this case. Actual reduction to practice may be dispensed with only by the filing of a complete, allowable application. The application here before us is not properly allowable. No valid patent could be issued thereon. Hence, appellant has failed to reduce his invention to practice prior to appellee’s filing date. Appellee, being the first to conceive and the first to reduce to practice, is clearly entitled to an award of priority, and cannot be deprived thereof by any steps that may now be taken by appellant.
The case of Davis v. Garrett, 28 App. D. C. 9, also relied upon by appellant, is not in point, since, in that case, there was proof, which was not contradicted, that the application had been sworn to subsequent to the alterations, although the oath did not appear in the record.
*370 The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required. Affirmed.